[No. S021288. Mar. 16, 1992.]

ARCADIA UNIFIED SCHOOL DISTRICT et al., Plaintiffs and Appellants, v.
STATE DEPARTMENT OF EDUCATION, Defendant and Respondent;
FRANCISCO SALAZAR, Intervener and Respondent.

254

## COUNSEL

Breon, O'Donnell, Miller, Brown & Dannis, Priscilla Brown, Nancy B. Bourne and Martha Buell Scott for Plaintiffs and Appellants.

Joseph R. Symkovick, Roger D. Wolfertz and Joanne Lowe for Defendant and Respondent.

Robert K. Miller, M. Carmen Ramirez, Grant R. Specht, Barbara Macri-Ortiz, Peter D. Roos and Deborah Escobedo for Intervener and Respondent.

Cynthia L. Rice, Ellen Braff-Guajardo, Tina L. Rasnow, Carol K. Smith, Elizabeth E. Guillan, Vibiana Andrade and Stephen P. Wiman as Amici Curiae on behalf of Intervener and Respondent.

## OPINION

**PANELLI, J.**—We granted review to decide whether Education Code section 39807.5,[1] which authorizes school districts to charge fees for pupil transportation, violates either the free school guarantee (art. IX, § 5) or the equal protection clause (art. I, § 7, subd. (a)) of the California Constitution. We conclude that the statute, on its face, violates neither constitutional guarantee.[2]

### FACTS

This case has its roots in an earlier case. In 1985, Francisco Salazar (the intervener in the present case) filed a taxpayers' suit in Ventura County Superior Court against the State Department of Education, the State Board of Education, the Superintendent of Public Instruction, and the Fillmore Unified School District,[3] alleging that defendants' implementation of section 39807.5 violated the free school guarantee and the equal protection clause of the California Constitution.[4] The superior court ruled that the school districts that assessed the fees were indispensable parties but did not reach the merits. The Court of Appeal, Second District, Division Six, reversed, holding that the districts were not indispensable parties, and that section 39807.5 violated both the free school guarantee and the equal protection clause of the state

---

[1] All further statutory references are to the Education Code, unless otherwise noted.

[2] The challenge in this case is to the facial constitutionality of section 39807.5; accordingly, we have no occasion to consider its constitutionality as it may be applied.

[3] The Fillmore Unified School District was dismissed from the case when it elected not to impose fees for student transportation.

[4] Section 39807.5 provides:

"When the governing board of any school district provides for the transportation of pupils to and from schools in accordance with the provisions of Section 39800, or between the regular full-time day schools they would attend and the regular full-time occupational training classes attended by them as provided by a regional occupational center or program, the governing board of the district may require the parents and guardians of all or some of the pupils transported, to pay a portion of the cost of such transportation in an amount determined by the governing board.

"The amount determined by the board shall be no greater than the statewide average nonsubsidized cost of providing such transportation to a pupil on a publicly owned or operated transit system as determined by the Superintendent of Public Instruction, in cooperation with the Department of Transportation.

"For the purposes of this section, 'nonsubsidized cost' means actual operating costs less federal subventions.

"The governing board shall exempt from these charges pupils of parents and guardians who are indigent as set forth in rules and regulations adopted by the board.

"No charge under this section shall be made for the transportation of handicapped children.

"Nothing in this section shall be construed to sanction, perpetuate, or promote the racial or ethnic segregation of pupils in the schools."

Constitution. (*Salazar* v. *Honig* (May 10, 1988) Cal.App. B026629.) On September 1, 1988, we denied review but ordered the Court of Appeal opinion depublished. On remand, the superior court entered judgment against the defendants.

Pursuant to the superior court's order, the State Department of Education (Department) issued a legal advisory, informing all school districts that section 39807.5 was unconstitutional and directing them to cease charging for transportation. However, numerous school districts, which were not parties to the Ventura County action, did not follow the advisory, taking the position that the statute was not unconstitutional.

The present action was instituted to determine the validity of section 39807.5. Twenty-five school districts as plaintiffs and the Department as defendant agreed to submit to the Sacramento County Superior Court on a stipulated statement of facts for judgment "to determine the rights of the parties." (Code Civ. Proc., § 1138.) Eighteen of the school districts had continued to charge for transportation, while seven had ceased after the decision in *Salazar* v. *Honig, supra,* Cal.App.) and the Department's legal advisory. The purpose of the action was to determine the facial validity of the statute, rather than to litigate the propriety of any particular application.

Salazar successfully moved to intervene. He also moved to dismiss, alleging that the Department was bound by the judgment in the Ventura County action as a party and that the school districts were bound as agents of the Department. The trial court denied the motion to dismiss and granted judgment for the Department, ruling that section 39807.5 facially violated the free school guarantee. (Cal. Const., art. IX, § 5.)

The Court of Appeal, Third District, in a unanimous decision, reversed. The court held that the districts were not collaterally estopped to maintain the action, because the public interest exception to the rule of collateral estoppel applied; the court therefore did not consider whether the districts were agents of the Department or in privity with it. The court also held that section 39807.5 on its face violates neither the free school guarantee nor the equal protection clause of the California Constitution.

COLLATERAL ESTOPPEL

As a threshold matter, we must determine whether the Court of Appeal was correct in holding that this action is not barred by the earlier judgment in *Salazar* v. *Honig* (*supra,* Cal.App.).

■ Salazar contends that the Department is bound by the judgment in *Salazar* v. *Honig* (*supra,* Cal.App.), and that the school districts are also

bound, since they are agents of the Department and in privity with it. "Generally, collateral estoppel bars the party to a prior action, or one in privity with him, from relitigating issues finally decided against him in the earlier action." (*City of Sacramento* v. *State of California* (1990) 50 Cal.3d 51, 64 [266 Cal.Rptr. 139, 785 P.2d 522], citing *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098] (*City of Sacramento*).) Salazar also claims that it was inappropriate for the Sacramento County Superior Court to take jurisdiction over the action when the state defendants were bound by the injunctions issued as a result of the Ventura County action. The Department and the school districts, on the other hand, maintain that the requirements of collateral estoppel are not met as to the school boards, because the boards are neither agents of, nor in privity with, the Department. Moreover, they maintain, even if the formal requirements are met, the Court of Appeal was correct in its holding that the action was not barred, because the requirements of the public interest exception to the doctrine of collateral estoppel are met, and we agree.

As we will discuss, it appears that the Court of Appeal properly applied the public interest exception. Therefore, like the Court of Appeal, we need not consider whether the districts were agents of the Department or in privity with it. We would be reluctant to do so in the absence of a factual record when our decision might have unforeseeable consequences in other cases and there is an alternative basis for our conclusion.

We recently affirmed the rule that, " 'when the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed. [Citations.]' " (*City of Sacramento, supra,* 50 Cal.3d at p. 64, quoting *Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 902 [160 Cal.Rptr. 124, 603 P.2d 41].) The issue in *City of Sacramento* was whether local governments were entitled to subvention of the costs of extended mandatory unemployment insurance coverage. We determined that the state should not be bound by a prior judgment on the issue because "the consequences of any error transcend those which would apply to mere private parties"; any error would also affect the taxpayers and employers of the state. (*City of Sacramento, supra,* 50 Cal.3d at pp. 64-65.)

It would be equally detrimental to the public interest to apply collateral estoppel here. Because *Salazar* v. *Honig* (*supra,* Cal.App.) was ordered not to be officially published and may not be cited as legal authority, there has been a continuing and demonstrable uncertainty about the validity of section 39807.5. School districts do not know if they can constitutionally charge for

school transportation, and have responded to this uncertainty in different ways. It is clearly in the public interest that school districts have a uniform understanding of this important issue. If we were to hold that this action could not go forward, and if *Salazar* v. *Honig* was wrongly decided, school districts would be unable to charge fees for transportation, and so they would be unable to collect those revenues, to which they are entitled by statute. Students might also be adversely affected, because those districts that could not afford to fund bus transportation out of their limited revenues might be forced to eliminate the service. The public interest, especially the interests of school districts, taxpayers, and students, will best be served by a final resolution by this court of whether the fees are permissible.

In addition, the unusual history of *Salazar* v. *Honig* (*supra*, Cal.App.) suggests that it would be in the public interest to permit this action to go forward. Although Salazar presented evidence at that trial on the unconstitutionality of section 39807.5, the state defendants did not present any evidence on the issue, nor did they argue that the statute was constitutional. Their defense was based solely on the contention that the school districts were indispensable parties. Thus, no one during the *Salazar* v. *Honig* proceedings contended that the statute could be applied in a manner consistent with the Constitution. The public interest would best be served by a determination of this important issue based on the presentation of both sides of the controversy.

The practical result of Salazar's position would be that the constitutionality of section 39807.5 would never again be litigated. If, as Salazar contends, all of the school districts in the state of California are bound by the decision in *Salazar* v. *Honig* (*supra*, Cal.App.) then no school district is free either to charge a fee for home-to-school transportation or to assert the constitutionality of the statute. In that case, there would be *no opportunity* for anyone *ever* to challenge the legal grounds of the unpublished ruling. Thus, in one fell swoop, by binding all the parties in the state who have any interest in the issue without naming them as parties to the first action, Salazar would have effectively prevented the constitutionality of this legislative enactment from ever being fully tested or defended.

None of the cases Salazar relies on convinces us that the Court of Appeal erred in applying the public interest exception. Salazar points out that the injustice exception to the rule of collateral estoppel has been criticized; however, that exception is distinct from the public interest exception, on which the Court of Appeal relied. (See *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 796 [126 Cal.Rptr. 225, 543 P.2d 593], criticizing *Greenfield* v. *Mather*

(1948) 32 Cal.2d 23, 35 [194 P.2d 1].) Salazar also brings to our attention cases concerning injunctive orders or class actions, in which parties were held to be bound by an earlier judgment. (See *Ross* v. *Superior Court* (1977) 19 Cal.3d 899 [141 Cal.Rptr. 133, 569 P.2d 727], and *Cartwright* v. *Swoap* (1974) 40 Cal.App.3d 567 [115 Cal.Rptr. 402].) He suggests that if we were to allow cases such as this to go forward, the result would be a "judicial administration nightmare." However, the cases he relies on do not address the particular exception that the Court of Appeal applied.

The public interest exception is an extremely narrow one; we emphasize that it is the exception, not the rule, and is only to be applied in exceptional circumstances. However, the unusually compelling facts in this case make it appropriate for us to apply the exception here. The matter before us involves a pure question of law. It affects the public in general, including children, parents and taxpayers; it also affects the ability of school districts to provide and finance school transportation. Because the school districts were not parties to the earlier case of *Salazar* v. *Honig* (*supra*, Cal.App.) they have not had the opportunity to litigate the constitutionality of section 39807.5. If the action were barred from going forward, then the state of the law on a matter of statewide importance would remain permanently unclear and unsettled. . Therefore, we conclude that the Court of Appeal did not err in applying the public interest exception to the rule of collateral estoppel, and that the parties were not barred from pursuing their case in the Sacramento County Superior Court.[5]

## FREE SCHOOL GUARANTEE

 Salazar argues that section 39807.5 violates California's free school guarantee, which provides that "[t]he Legislature shall provide for a system

---

[5]Salazar argues that the impropriety of the Sacramento County action is shown by the fact that the districts did not name the Superintendent of Public Instruction as a defendant. The Ventura County Superior Court ordered the superintendent to inform all school districts in California that they could not lawfully charge for home-to-school transportation, and further prohibited him from calculating the statewide average nonsubsidized cost under section 39807.5; this calculation is necessary for school districts to charge fees for transportation under the statute.

In our view, whether or not the districts were agents or privies of the Department, the public interest demanded that the parties not be barred from litigating the facial validity of the statute. We see no objection to their bringing the action in the county of the Department's principal place of business. This action does not directly interfere with the injunction against the Superintendent of Public Instruction which, as Salazar points out, is still in effect. (See 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, §§ 1-3, pp. 403-407.) After our decision, we are confident that the parties will file the appropriate action to challenge the continued propriety of the injunction against the Superintendent of Public Instruction.

of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established." (Cal. Const., art. IX, § 5.)[6] We must first establish the scope of our inquiry. The statute is a legislative enactment. "In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act. [Citations.] Thus, wherever possible, we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute. [Citations.]" (*California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].)[7]

 The first step in interpreting an ambiguous constitutional provision is to look at the intent of the framers. (See *Story* v. *Richardson* (1921) 186 Cal. 162, 165 [198 P. 1057, 18 A.L.R. 750].) The California free school guarantee was adopted during the 1878-1879 Constitutional Convention. It substantially followed a provision of the state's 1849 Constitution, but, unlike the earlier provision, it required schools to be "free." (See Debates & Proceedings, Cal. Const. Convention 1878-1879, p. 1100, remarks of Mr. Winans.) The history of the 1878-1879 constitutional debates gives very little guidance on the meaning of the term "free school," except to note that "[a] free school is a school at which pupils may attend without charge." (Debates & Proceedings, Cal. Const. Convention 1878-1879, *supra*, at p. 1100, remarks of Mr. Jones.) The only evidence we have located of whether the framers expected schools to provide transportation is the statement of one delegate that he knew "many a small common school, or district, where children ride on horseback a distance of five or eight miles to school in the morning, and home at night." (*Ibid.*) This statement suggests that although the framers were aware of the difficulties students might face in getting to school, they did not consider transportation part of the school system. Thus, although the history of the 1879 Constitution does not make entirely clear whether the framers would have intended to allow school districts to charge a fee for transportation if they chose to provide that service, it supports the view that transportation is not included within the free school guarantee.

In the absence of more explicit guidance on the intent of the framers, the next step is to look to our previous cases to shed light on the meaning of the

---

[6]The Department has taken no position on whether section 39807.5 violates the free school guarantee or the equal protection clause of the California Constitution.

[7]It is important to recognize that the challenged act here is a legislative act. As a result, this situation is fundamentally different from that in *Hartzell* v. *Connell* (1984) 35 Cal.3d 899 [201 Cal.Rptr. 601, 679 P.2d 35], on which Salazar relies, which is discussed in detail below. In *Hartzell*, we were considering fees that were imposed by a school district, *which the district had not been authorized by law to impose.*

free school guarantee. In the past, we have supplemented our own history of interpreting the free school guarantee by looking to other states' interpretations of similar provisions in their states' constitutions. (See *Hartzell v. Connell, supra,* 35 Cal.3d 899, 905-912.) It is especially appropriate for us to continue to do so in this case, because California's provisions for schooling appear to have been at least partially modeled on similar provisions in other states' constitutions. (See Debates, Cal. Const. Convention 1849, p. 206 [former art. IX, § 3, predecessor to current art. IX, § 5, similar to provisions adopted by several other states]; see also Debates & Proceedings, Cal. Const. Convention 1878-1879, *supra,* at p. 1087 [proposed art. IX, § 1 taken partly from Arkansas and Missouri Constitutions, and proposed art. IX, § 4 taken from the Illinois Constitution] and p. 1089 [spread of free school guarantees from Missouri].)

The leading case interpreting California's free school provision is *Hartzell v. Connell, supra,* 35 Cal.3d 899 (*Hartzell*). *Hartzell* involved a challenge to the fees a school district charged for participation in such extracurricular activities as dramatic productions, music groups, and cheerleading groups. As previously noted, there was no statutory authorization for such fees. We held that the free school guarantee extends not only to classes, but also to extracurricular activities which are " 'educational' in character." (*Hartzell, supra,* 35 Cal.3d at p. 911.) However, Salazar asks us to hold that the guarantee includes transportation to and from school, which none of the educator parties maintain is an educational activity.[8] ▮ Salazar asserts that school-provided transportation, although not educational in character, is nonetheless covered by *Hartzell*'s understanding of the free school guarantee because it is an "integral fundamental part of [] elementary and secondary education," or a "necessary element[] of any school's activity." (*Id.* at p. 905, citing *Bond v. Ann Arbor School District* (1970) 383 Mich. 693, 702 [178 N.W.2d 484, 41 A.L.R.3d 742].)

In attempting to determine whether the extracurricular activities in *Hartzell* came within the protection of the free school guarantee, we considered two approaches to resolution of the issue used by other states with similar constitutional provisions. The first approach, which we rejected, restricts the free school guarantee to "programs that are 'essential to the prescribed curriculum.' [Citations.]" (*Hartzell, supra,* 35 Cal.3d at p. 905.) This approach would not have guaranteed free access to activities that are not

---

[8] Amicus curiae City Terrace Coordinating Council, in an argument that bus transportation is educational in character, points out that students are supervised on bus rides, must maintain certain standards of behavior, and face suspension for breaches of discipline. However, the enforcement of rules against noisiness and general rowdiness on buses is clearly required for the safety of the students on a moving bus. This necessary discipline does not transform a bus ride into an educational activity.

contained within a school's regular academic coursework. The second approach extends the free school guarantee "to all activities which constitute an 'integral fundamental part of the elementary and secondary education' or which amount to '"necessary elements of any school's activity." ' [Citations.]" (*Ibid.*) This second approach, we noted, had led states that adopted it to strike down extracurricular activity fees as violative of their free school provisions. (*Id.* at pp. 905-906.) After reviewing the history and purpose of California's free school guarantee, we approved the second, broader approach, because it "does not sever the concept of education from its purposes. It focuses not upon the formalities of credit, *but upon the educational character of the activities in question.*" (*Id.* at p. 909, italics added.)

Applying this second approach in *Hartzell*, we noted that the activities in question served the purposes of education: to prepare students for participation in political affairs and in institutional structures such as labor unions and business enterprises and to serve as a "unifying social force." (*Hartzell, supra,* 35 Cal.3d at pp. 907-908.) We determined that extracurricular activities constitute "an integral component of public education" and are "a fundamental ingredient of the educational process." We also noted that extracurricular activities are "[no] less fitted for the ultimate purpose of our public schools, to wit, the making of good citizens physically, mentally, and morally, than the study of algebra and Latin . . . ." (*Id.* at p. 909, internal quotation marks and citations omitted.) We therefore concluded that, "[*s*]*ince it is not disputed that the programs involved in this case are 'educational' in character*, they fall within [the free school] guarantee." (*Id.*, at p. 911, italics added.)

It is clear that we adopted the second of the two approaches, in which we looked at whether an activity is an integral, fundamental part of education or a necessary element of any school's activity, specifically *because* that approach focuses "upon *the educational character of the activities in question.*" (*Hartzell, supra,* 35 Cal.3d at p. 909, italics added.) The two parts of the approach we adopted *both* focus on whether an activity is educational in character. ("The second approach . . . focuses not upon the formalities of credit, but upon the educational character of the activities in question." (*Ibid.*)) As a result, we twice stated our holding that "all *educational activities* . . . offered to students by school districts fall within the free school guarantee" (*id.* at p. 911, italics added), and that "the imposition of fees for *educational activities* offered by public high school districts violates the free school guarantee." (*Id.*, at p. 913, italics added.) Thus, neither our holding nor our reasoning in *Hartzell* leads to the conclusion that noneducational activities are protected by the free school guarantee. Although in *Hartzell* we

adopted a broad understanding of what activities are protected as educational, we did not extend that expansive understanding of the free school clause beyond the realm of educational activities to noneducational supplemental services. ▮ Transportation is simply not an educational activity. It is not protected by the reasoning of *Hartzell.*

Against this conclusion, Salazar contends that, although bus transportation is not educational, it is a " ' "necessary element[] of any school's activity." ' " (*Hartzell, supra,* 35 Cal.3d at p. 905.) However, it appears that Salazar has misunderstood what the cases mean by the quoted language. We believe that the Court of Appeal in this case was correct when it concluded that transportation is not an essential element of school activity.

The language we adopted in *Hartzell* was derived from *Bond* v. *Ann Arbor School District* (*supra,* 383 Mich. 693 [178 N.W.2d at p. 487]), which held that, under the Michigan free school guarantee, schools could not charge a fee for textbooks and school supplies. Quoting *Paulson* v. *Minidoka County School District No. 331* (1970) 93 Idaho 469 [463 P.2d 935, 938-939], the Michigan Supreme Court stated that " '[t]extbooks are necessary elements of any school's activity. They represent a fixed expense peculiar to education, the benefits from which inure to every student in equal proportion . . . solely as a function of his being a student. Unlike pencils and paper, the student has no choice in the quality or quantity of textbooks he will use if he is to earn his education. He will use exactly the books, prescribed by the school authorities, that his classmates use; and no voluntary act of his can obviate the need for books nor lessen their expense. School books are, thus, indistinguishable from other fixed educational expense items such as school building maintenance or teachers' salaries.' " (*Bond, supra,* 178 N.W.2d at p. 487.) Thus, the court concluded, textbooks and school supplies were "necessary elements of any school's activity," and must be provided without cost to the students. (*Id.* at p. 488.)[9]

None of these considerations apply to school bus transportation. Students are not required to use the same means of transportation as their classmates

[9]Based on this line of cases, it appears that, at least in its origin, the "necessary elements of any school's activity" test was extremely restrictive, protecting only activities that truly were *essential* to the functioning of *any* school. As noted above, the Michigan court in *Bond* v. *Ann Arbor School District* relied on *Paulson* v. *Minidoka County School District No. 331* for its formulation. However, *Paulson* did not interpret the phrase expansively. The *Paulson* court stated that it would permit a charge for participation in extracurricular activities, because they were not "necessary elements of a high school career," but it invalidated a fee for textbooks. (*Paulson, supra,* 93 Idaho 469 [463 P.2d 935, 938.]) Thus, the cases applying the "necessary elements" test do not give any support for the broad application urged by Salazar.

in order to get to school to receive an education; individual students may choose different modes of transportation to suit their own circumstances. Unlike textbooks or teachers' salaries, transportation is not an expense peculiar to education. ▇ Without doubt, school-provided transportation may enhance or be useful to school activity, but it is not a necessary element which each student must utilize or be denied the opportunity to receive an education.[10]

This conclusion is especially true in this state, since, as the Court of Appeal correctly noted, school districts are permitted, but not required, to provide bus transportation. (§ 39800.) If they choose, districts may dispense with bus transportation entirely and require students to make their own way to school.[11] Bus transportation is a service which districts may provide at their option, but schools obviously can function without it. Therefore, we are not persuaded by Salazar's argument that, although bus transportation is not an educational activity, it is protected by the free school guarantee as a "necessary element of any school's activity."

Our conclusion appears to be in accord with the authority in other states with similar free school guarantees. Courts that have considered the issue have arrived at the conclusion that states or school districts may charge a fee for bus transportation without violating the free school guarantee. A Michigan court relied on *Bond* v. *Ann Arbor School District, supra*, for its conclusion that transportation was not an essential part of a system of free public schools in the way that books and school supplies were. (*Sutton* v. *Cadillac Area Public Schools* (1982) 117 Mich. App. 38 [323 N.W.2d 582, 583-584], citing *Bond, supra*, 383 Mich. 693 [178 N.W.2d 484].) Citing *Sutton*, the North Dakota Supreme Court held in *Kadrmas* v. *Dickinson Public Schools*

---

[10]Clearly, the protection of the free school clause extends to the cost and upkeep of the school itself and its physical facilities; districts cannot charge for such expenses as teachers' salaries, school furniture, or the use of school buildings for educational activities. Items such as these are necessary elements of any school's activity, and must be provided to students without charge. (See *Bond* v. *Ann Arbor School District, supra*, 178 N.W.2d at pp. 487-488.)

[11]In *Manjares* v. *Newton* (1966) 64 Cal.2d 365, 375-376 [49 Cal.Rptr. 805, 411 P.2d 901], we decided that a school district that provides bus service may not act in an arbitrary and capricious manner in deciding which outlying areas will be offered that service. We have not yet addressed the question of whether the failure to offer bus service at all may also constitute an abuse of discretion or violate the free school or equal protection clause of the California Constitution if children are thereby deprived of the ability to attend school. We emphasize that section 39807.5 provides that indigent students will not have to pay a fee; therefore, in this facial challenge we do not anticipate that any child will be unable to attend school as a result of a proper application of section 39807.5.

(N.D. 1987) 402 N.W.2d 897, affirmed (1988) 487 U.S. 450,[12] that districts could charge for bus transportation consistent with the state constitutional article mandating a uniform system of free public schools. (N.D. Const., art. VIII, § 2.) In reaching its holding, the court stated that "transportation is not a necessary element of the educational process, and it is not an integral part of the educational system to which the constitution refers in requiring the Legislature to provide 'a uniform system of free public schools.' Although transportation may be an important prerequisite to accepting the educational opportunities offered in the public school system it is not part of the system." (402 N.W.2d at p. 901.) The court stated that, as with other important prerequisites to education, such as good nutrition and proper immunizations, a state may participate in providing them, but was not required to do so. (*Id.* at pp. 901-902.) We find this analysis to be reasonable and persuasive. Thus, a line of cases following *Bond*, on which we relied in *Hartzell, supra*, 35 Cal.3d 899, to conclude that the free school guarantee covers extracurricular activities, supports our conclusion that states may charge a fee for transportation consistent with the free school guarantee.

■ Finally, Salazar contends that section 39807.5 should be held invalid because of the "stigma" attached to applying for a waiver. (See *Hartzell, supra*, 35 Cal.3d at p. 912.) Salazar's argument ignores the crucial fact that *Hartzell* involved a fee for activities that were protected by the free school guarantee; we based our rejection of the waiver on the requirement that educational extracurricular activities be truly free. In this case, the fee in question is for a noneducational service. There is no more stigma attached to applying for a transportation waiver than there is in applying for any other noneducational government benefit, such as subsidized school lunches. (See § 49550 et seq.)

As noted earlier, section 39807.5 is a legislative enactment; it is our duty to uphold it unless its unconstitutionality is clear and unquestionable. (*California Housing Finance Agency* v. *Elliott, supra*, 17 Cal.3d 575, 594; accord, *Dean* v. *Kuchel* (1951) 37 Cal.2d 97, 101 [230 P.2d 811].) Based on the foregoing analysis, we cannot conclude that it is clear and unquestionable that the statute, on its face, violates the free school guarantee. Therefore, we hold that section 39807.5 does not violate California's free school guarantee.

---

[12]Because the United States Supreme Court based its decision affirming the North Dakota Supreme Court's judgment on the federal equal protection clause, under which education is not a fundamental right, it is not relevant to our analysis here. (*Kadrmas* v. *Dickinson Public Schools* (1988) 487 U.S. 450, 458, 465 [101 L.Ed.2d 399, 409, 413-414, 108 S.Ct. 2481].)

## EQUAL PROTECTION

■ Salazar also argues that section 39807.5 violates California's equal protection clause. (Cal. Const., art. I, § 7, subd. (a).)[13] He claims that the statute discriminates against poor students and that it creates a classification based on wealth that will affect children's ability to exercise their fundamental right to education. (See *Serrano v. Priest* (1971) 5 Cal.3d 584, 604-610 [96 Cal.Rptr. 601 [487 P.2d 1241, 41 A.L.R.3d 1187] *(Serrano I)*, and *Serrano v. Priest* (1976) 18 Cal.3d 728, 765-766 [135 Cal.Rptr. 345, 557 P.2d 929], cert. den. 432 U.S. 907 [53 L.Ed.2d 1079, 97 S.Ct. 2951] *(Serrano II)*.) Therefore, Salazar contends, we should subject the statute to strict scrutiny rather than to rational basis analysis.

Salazar's claims that school transportation fees discriminate against the poor and burden the exercise of a fundamental right might have merit if the statute were to be applied in such a way that children were prevented from attending school because they could not afford to pay the fees. However, section 39807.5 specifically provides that indigent children must be exempted from paying fees for transportation. If the statute is properly administered, no child will be denied transportation to school because of poverty. We have no reason to believe, in this facial challenge, that the statute will be applied improperly.

---

[13]Article I, section 7, subdivision (a) provides in part that: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this state may impose upon the State of California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution."

The qualification regarding school assignment and transportation was adopted by the voters in 1979. The history of the amendment makes clear that the qualification was adopted in order the limit the use of compulsory busing designed to desegregate schools. (See Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Special Statewide Elec. (Nov. 16, 1979) at pp. 6-9.) This case addresses a different concern; it does not consider the *use* of busing, but rather whether the imposition of a *fee* for transportation establishes a suspect class or impermissibly affects poor children's exercise of a fundamental right. Neither the Court of Appeal nor the parties have addressed the amendment in this case. Accordingly, we express no opinion on this provision of the Constitution.

Salazar also contends that section 39807.5 allows impermissible disparity of treatment among students in different districts, based on whether or not each district charges for transportation and how each defines indigency. (See *Serrano II, supra,* 18 Cal.3d at pp. 761, 765-766.) However, this need not result in an equal protection violation. Under our interpretation of the statute, a student who cannot afford to pay for transportation to attend school may not be charged for school-provided transportation. If a district provides transportation without charge, the service will be free to all students; if a district charges for transportation, students who cannot afford to pay the fee will be exempted. Therefore, poor students in different districts will have equal access to school-provided transportation, if their districts elect to provide it.[14]

Because this is a challenge to the facial validity of section 39807.5, our task is to determine whether the statute can constitutionally be applied. ■ "To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215], italics in original.) ■ In this case, there is no evidence that the statute has been or will be applied in such a way as to discriminate against poor students or affect their ability to obtain an education. Therefore, we conclude that the Court of Appeal was correct in holding that the statute does not facially violate equal protection.

### CONCLUSION

For the foregoing reasons, we conclude that, on its face, section 39807.5 does not violate California's free school guarantee or equal protection clause. Therefore, the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.,** Dissenting.—The majority opinion holds that Education Code section 39807.5, which purports to authorize school districts to charge fees for pupil transportation, does not violate the free school guaranty (art. IX, § 5) of the California Constitution. I disagree and therefore dissent.

---

[14]As stated earlier, the situation presented by districts that choose not to provide transportation has nothing to do with section 39807.5 and is, for that reason, beyond the scope of this facial challenge to the statute. The parties have not addressed the issue in their briefs and have agreed that that issue is not before the court.

In *Hartzell* v. *Connell* (1984) 35 Cal.3d 899, 905 [201 Cal.Rptr. 601, 679 P.2d 35] (hereafter *Hartzell*), we held the free school guaranty applicable to "all activities which constitute an 'integral fundamental part of the elementary and secondary education' or which amount to ' "necessary elements of any school's activity" ' " (quoting *Bond* v. *Ann Arbor School District* (1970) 383 Mich. 693, 702 [178 N.W.2d 484, 41 A.L.R.3d 742].) *Hartzell* held that charging fees for extracurricular activities violated the free school guaranty even though the activities did not yield academic credit. We reasoned that the activities in question, which included sports, music, and drama, contributed to the educational process by imparting not only specific skills but also leadership and a sense of a collective endeavor. Thus, whether or not a course yielded academic credit did not alone determine if it was integral to the schooling process.

The present case presents even more compelling reasons for finding a violation of the free school guaranty. If the fees in *Hartzell* threatened free schooling by endangering noncredit cultural development, the fees imposed here on school transportation go even further by threatening to abort the educational opportunity itself. In *Hartzell*, discussing low-income families that may not qualify for or be aware of the fee-waiver program, we stated that a student's opportunity to participate in extracurricular activities "cannot be made to depend upon his or her family's decision whether to pay a fee or buy a toaster." (*Hartzell, supra,* 35 Cal.3d at p. 912.)

That pronouncement applies even more strongly to the present case. The very act of sending a child to school should not be foreclosed because the choice comes down to busfare or grocery money. It is common knowledge that these are difficult economic times, a fact that probably explains why a number of school districts have resorted to charging transportation fees. However, to try to save public money by instituting measures that threaten education for low-income children is not only shortsighted, it is violative of the democratic principles that give our political system its legitimacy.

The majority appear to conclude that unlike textbooks or teachers' salaries, "transportation is not an essential element of school activity." (Maj. opn., *ante,* p. 263.) Certainly transportation in and of itself is not essential to education; but transportation *to and from school* is essential to education because it is a prerequisite to it. For the student who cannot walk to school and cannot afford public or private transportation, a school bus is as essential to the process of education as the school building, the desk, the blackboard and the teacher.

As Justice Rutledge, joined by Justices Frankfurter, Jackson, and Burton, eloquently observed: "Without buildings, without equipment, without library, textbooks and other materials, and without transportation to bring

teacher and pupil together in such an effective teaching environment, there can be not even the skeleton of what our times require. Hardly can it be maintained that transportation is the least essential of these items, or that it does not in fact aid, encourage, sustain and support, just as they do, the very process which is its purpose to accomplish. No less essential is it, or the payment of its cost, than the very teaching in the classroom or payment of the teacher's sustenance. Many types of equipment, now considered essential, better could be done without." (*Everson* v. *Board of Education* (1946) 330 U.S. 1, 48 [91 L.Ed. 711, 740, 67 S.Ct. 504, 168 A.L.R. 1392] (dis. opn. of Rutledge, J.).) The majority in *Everson* declared nothing that disagreed with the foregoing observation of Justice Rutledge. Indeed, the bare majority went so far as to approve public funding of transportation to private schools.

California cases have also emphasized the importance of transportation in the education process. (See, e.g., *San Francisco Unified School District* v. *Johnson* (1971) 3 Cal.3d 937, 959-960, fn. 29 [92 Cal.Rptr. 309, 479 P.2d 669]: "[t]he educational structure of California is not, and cannot be, so designed that every pupil is provided with a school within walking distance of his home. In rural areas almost all students travel by school bus; in urban regions the attendance zones of secondary schools often exceed a walking radius"; *Bowker* v. *Baker* (1946) 73 Cal.App.2d 653, 660 [167 P.2d 256], declaring that the function of free school transportation is to induce pupil attendance.) The majority's attempt to distinguish school transportation from textbooks, teachers' salaries and other elements of the educational process is unpersuasive.

Nor are the fees justified by the fact that school districts are not required to provide transportation. In *Hartzell, supra*, 35 Cal.3d 899, extracurricular activities were provided at the school's discretion, but that fact did not resolve the issue of permissibility of fee charges. Apart from the basic curriculum, much is left to the discretion of individual school districts. It is inconsistent with the free school guaranty to hold that where there is discretion there may automatically be fees. Nor am I persuaded by the speculative argument that without bus fees, transportation will be terminated entirely to the detriment of the indigent and handicapped; nearly a decade has passed since *Hartzell* was decided and extracurricular activities have not vanished.

Finally, fee waivers for the "indigent" cannot save the statute. The Constitution guarantees free schooling to all, not just to indigents. Thus, the presence or absence of a waiver is irrelevant to the free school clause issue. Even were this not the case, the potential for fee waivers for the indigent

does not allay any of the concerns discussed above because Education Code section 39807.5 leaves the task of defining "indigent" to the governing boards of the school districts themselves; thus many families not fitting whatever definition the districts decide to adopt may still have difficulty making ends meet. A waiver for the poorest families, such as those receiving public aid, still requires the "working poor" to cut necessities in order to educate their children.[1] If it comes down to a choice between grocery money and busfare, the child will be the loser.

Contrary to the opinions in Michigan and North Dakota relied upon by the majority, the importance of transportation to the process of education was emphasized by this court a quarter of a century ago in *Manjares* v. *Newton* (1966) 64 Cal.2d 365 [49 Cal.Rptr. 805, 411 P.2d 901]. In that case we ordered bus service to be provided to a group of pupils arbitrarily excluded by the district. We dismissed the claim that "economic considerations" justified the exclusion (*id.* at pp. 374-375), observing that "society has a compelling interest in affording children an opportunity to attend school." (*Id.* at p. 375.) Clearly we were not speaking in terms of curriculum or even extracurricular activities, but rather simply of the *opportunity to attend school,* which encompasses the means necessary to get there.

Transportation to school is a "necessary element" of schooling within the meaning of *Hartzell, supra,* 35 Cal.3d at page 905. I would therefore reverse the judgment of the Court of Appeal. As I believe the statute violates the free school guaranty, I see no need to reach the equal protection issue.

---

[1]There have been actual instances in which school districts premised eligibility for fee waivers on receipt of welfare assistance. (*Salazar* v. *Honig* (May 10, 1988) Cal.App. B026629.) As the majority note, we ordered that opinion unpublished on September 1, 1988.