353 F.3d 758
 CITY OF MARTINEZ, a municipal corporation, Plaintiff-Appellant,
v.
TEXACO TRADING & TRANSPORTATION, INC., a Delaware corporation; Equilon Pipeline Co., LLC, a Delaware corporation, Defendants-Appellees.
 No. 02-16436.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 8, 2003 — San Francisco, California.
 Filed December 24, 2003.
 
 COPYRIGHT MATERIAL OMITTED John D. Hoffman (argued), Ellman, Burke, Hoffman & Johnson, San Francisco, California, for the plaintiff-appellant.
 John R. Reese (argued), Bingham McCutchin, LLP, San Francisco, California, for the defendants-appellees.
 Stephan C. Volker, Law Offices of Stephan C. Volker, Oakland, California, for Amici Curiae Sierra Club, Golden Gate Audubon Society and Marin Audubon Society.
 Appeal from the United States District Court for the Northern District of California; Claudia Wilken, District Judge, Presiding. D.C. No. CV-00-04716-CW.
 Before: Michael Daly HAWKINS, Sidney R. THOMAS, and Richard R. CLIFTON, Circuit Judges.
 OPINION
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 1
 The City of Martinez, California ("the City") appeals the district court's grant of summary judgment in favor of Defendant Texaco Trading and Transportation, Inc. ("Texaco")[1] on the basis that the City's seventeen causes of action were barred by res judicata because of an earlier civil compromise compromise between the California Department of Fish and Game ("DFG") and Texaco. Because we determine that there are issues raised by the City's suit not addressed by the DFG proceeding and that with regard to the City's private easement claims, it was not in privity with the DFG in the first action, res judicata does not apply to those claims. Accordingly, we affirm the district court's grant of summary judgment with regards to the City's "public" claims, but we reverse with regard to the City's private easement claims.
 
 I.
 
 2
 A private landowner granted the City an Open Space and Conservation easement in January 1997, pursuant to California's Open Space Easement Act of 1974. See Cal. Gov't Code §§ 51070-51097. The easement covered a portion of Mococo Marsh, a 650-acre wetland area along the south shore of Carquinez Strait and Suisin Bay in California and was granted so that the City could "preclude physical development of wetlands and the shoreline...."
 
 
 3
 In November 1997, an oil spill was discovered in Mococo Marsh. The DFG's Office of Spill Prevention and Response ("OSPR") traced the spill to a leak in Texaco's pipeline. The spill covered four acres of the marsh before it was contained.[2]
 
 
 4
 Texaco installed booms to contain the oil and DFG's Regional Board formally ordered Texaco to clean up and abate the spill. Six months later, the Regional Board accepted Texaco's proposed remediation plan, which entailed removing the top twelve inches of Marsh soils and replacing the soil. After Texaco executed their plan, the DFG determined that the Regional Board's order should be rescinded, finding that "the cleanup and backfill [were] satisfactory." The Regional Board concurred and issued a "no further action" letter on April 8, 2000.
 
 
 5
 The Contra Costa County District Attorney thereafter filed a criminal misdemeanor complaint against Texaco in municipal court, alleging that Texaco had violated California Fish & Game Code § 5650(a) by unlawfully depositing crude oil into California waters. The DFG and district attorney entered into settlement negotiations. The City of Martinez was aware of these negotiations, but was told by the Deputy District Attorney that the City need not participate in the negotiations and would be free to pursue its own civil remedies after the settlement was finalized. Thus, the City did not participate in the negotiations which resulted in a civil compromise between DFG and Texaco pursuant to which the misdemeanor charge was dismissed and Texaco paid $138,292.80 to the DFG. The City thereafter filed its civil complaint, seeking damages and injunctive relief arising out of the November 1997 oil spill. The district court granted Texaco's motion for summary judgment, finding that the preclusive effect of the civil compromise between Texaco and the DFG barred the City from bringing its action. We disagree.
 
 II.
 
 6
 We review de novo the district court's grant of summary judgment barring the City's complaint under the doctrine of res judicata. See Alfrey v. United States, 276 F.3d 557, 561 (9th Cir.2002); Pavon v. Swift Transp. Co., 192 F.3d 902, 906 (9th Cir.1999).
 
 
 7
 Res judicata applies if: (1) the issues decided in the prior adjudication were identical to the issues raised in the present action, (2) the prior proceeding resulted in a final judgment on the merits, and (3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication. See Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n, 60 Cal.App.4th 1053, 71 Cal.Rptr.2d 77, 84 (1998) ("Seadrift"). If Texaco failed to prove any one of the three prongs, res judicata is inapplicable and the City's action is not barred. California also recognizes a "public interest" exception to res judicata. "Under the public interest exception, courts may permit relitigation of an issue of law concerning a public entity's ongoing statutory obligations that affect individuals and members of the public not specifically before the court in the first litigation." San Diego Police Officers' Assn. v. City of San Diego Civil Service Com., 104 Cal.App.4th 275, 128 Cal.Rptr.2d 248, 251 (2002) (citing Arcadia Unified School Dist. v. State Dept. of Education, 2 Cal.4th 251, 5 Cal.Rptr.2d 545, 825 P.2d 438 (1992)). We determine that there are different issues asserted in the two cases and also that considering the City's private easement claims, the City was not in privity with the DFG in the first action.
 
 
 8
 A. New Issues Raised in the City's Civil Complaint
 
 
 9
 The civil compromise the district court determined was a bar to the present action was a California state court judgment. We give preclusive effect to that judgment and thus apply California law. See 28 U.S.C. § 1738.
 
 
 10
 For res judicata to apply, the issues decided in the prior adjudication must have been identical to the issues raised in the present action. Seadrift, 71 Cal.Rptr.2d at 84. Under California law, a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty. Id. at 86. Claims are "identical" if they involve the same "primary right." Acuna v. Regents of Univ. of Cal., 56 Cal.App.4th 639, 65 Cal. Rptr.2d 388, 394 (1997). To determine if the issues in both actions involve the same primary right, we look to the rights sought to be vindicated and, specifically, to the claimed harm. The fact that various theories of recovery are asserted and various remedies are requested does not necessarily create different primary rights. Gates v. Superior Court, 178 Cal.App.3d 301, 223 Cal.Rptr. 678, 683 (1986).
 
 
 11
 However, in this case, some of the City's seventeen causes of action do amount to a different primary right than that at issue in the prior criminal proceeding that resulted in the civil compromise. Primarily, the City has a distinct property interest in Mococo Marsh arising from its easement. This primary right stemming from this property interest, as opposed to the public rights the City also asserts, was not adjudicated in the prior proceeding.
 
 
 12
 In Seadrift, the California Court of Appeal held that a plaintiff public interest group was barred from seeking an implied dedication of a recreational easement when several state agencies had previously entered into a settlement agreement that had resolved the issue. 71 Cal.Rptr.2d 77. Although the Seadrift court found the new plaintiff's claims to be barred, the court specifically noted that the Seadrift plaintiff did not claim any individual private property rights separate and apart from those already adjudicated. Id. at 91. The implication was that private property rights, if raised, would not have been barred by res judicata. Id. See also Alaska Sport Fishing Ass'n v. Exxon Corp., 34 F.3d 769, 770-73 (9th Cir.1994) (barring plaintiffs' claims under res judicata, but recognizing that sufficiently private, individual injuries may not have been barred).[3]
 
 
 13
 In the case at hand, the DFG's complaint described a public offense subject to criminal prosecution, whereas counts in the City's complaint ask for a civil remedy for invasion of a private property right. Specifically, the City asserts that it is entitled to just compensation for the violation of its easement,[4] just the same as a landowner is entitled to just compensation for the taking of its property. When an easement owner is deprived of some aspect of its property right, the owner may seek damages and injunctive relief. See Moylan v. Dykes, 181 Cal. App.3d 561, 226 Cal.Rptr. 673, 680 (1986). Here, the City seeks damages under California Civil Code §§ 815.1 and 815.3(b) for "the loss of scenic, aesthetic, or environmental value to the real property subject to the easement." The City also argues that the oil spill decreased the value of the easement by causing damage to wildlife on the land. These asserted property rights form a different primary right than that involved in the § 5650(a) prosecution. It is just this type of private right that the Seadrift court intended not be barred by prior resolution of public claims.
 
 
 14
 Further, this property right was plainly not adjudicated in the first action. The civil compromise provided for monies to be paid to the DFG, but the City's rights and possibility of recovering damages were not considered, nor did the City receive any portion of the sum allocated to the DFG. Moreover, the City's cause of action asserting violation of the private property right could not have been raised in the prior criminal proceeding. The criminal court would not have had jurisdiction over the civil claims. Thus, this private property right the City seeks to assert is not identical to the issue raised in the prior action under California Fish and Game Code § 5650(a) and res judicata does not apply.
 
 B. City Not in Privity with DFG
 
 15
 Res judicata is also inapplicable because Texaco failed to prove that the City was in privity with the DFG in the first action with regards to the easement claim. See United States v. Geophysical Corp., 732 F.2d 693, 697 (9th Cir.1983) (a person not a party to a prior action bound by the prior decision if found in privity). Privity applies if a party's interests are so similar to another party's interests that "the latter was the former's virtual representative in the earlier action." Seadrift, 71 Cal.Rptr.2d at 88. The California courts further apply privity where "the nonparty has an identity of interest with, and adequate representation by, the party in the first action and the nonparty should reasonably expect to be bound by the prior adjudication." Helfand v. Nat'l Union Fire Ins. Co., 10 Cal.App.4th 869, 13 Cal. Rptr.2d 295, 314 (1992). See also Clemmer v. Hartford Ins. Co., 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978) (privity is a requirement of due process).
 
 
 16
 Certainly the DFG and the City did share one fundamental interest — ensuring that the oil spill at Mococo Marsh was adequately abated and that the land was returned to its natural state to the best extent possible. To the extent that the City now seeks to represent the public interest in its complaint, the City and the DFG are considered to be in privity because the DFG was clearly authorized to resolve the dispute involving the oil spill on behalf of the public. Cal. Gov't Code § 8670.7(a). However, the DFG did not act as the City's "virtual representative" regarding the private easement claim because the DFG did not share in the City's private property easement and thus had no interest in ensuring the City be compensated for damage to the easement. "[A]dequate representation in the earlier litigation by [a] party with parallel interests is the pivotal requirement for virtual representation." Helfand, 13 Cal.Rptr.2d. at 314 (Cal.Ct.App.1992). The DFG did not have the authority to settle the City's damage claims, nor is there any evidence that the DFG represented the City's interests in actuality.
 
 
 17
 Also, by informing the City that the settlement would not preclude it from later raising its civil claims, the DFG made clear that it did not think it was representing the City's interests.[5] In the final analysis, we must consider the fairness of binding the City to a result obtained in an earlier proceeding in which it did not participate. George F. Hillenbrand, Inc. v. Ins. Co. of North America, 104 Cal.App.4th 784, 128 Cal.Rptr.2d 586 (2002). While the City did have notice of the prior proceeding, it was told it need not participate. As its interests were not adequately represented by the DFG and it was told not to participate, it would be patently unfair to bar the City's claims based on res judicata. Given our resolution of these issues, we need not decide whether California's public interest exception would apply.
 
 CONCLUSION
 
 18
 The question in this case is not whether the City's seventeen causes of action will succeed, but whether they are flatly barred by the DFG's settlement with Texaco. While the City's "public" claims are barred because they were resolved by the settlement entered into by the DFG, the claimed injury to the City's easement has never been addressed by any court, and the DFG did not act as the City's virtual representative in the first action as to that claim so as to put them in privity with one another.
 
 
 19
 AFFIRMED in part, REVERSED in part, and REMANDED. Each party to bear its own costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 Texaco operated the pipeline that is at the center of this action when the oil spill occurred. Texaco has since merged into Equilon Enterprises, Inc. The pipeline is now operated by Equilon Pipeline Co., a subsidiary of Equilon Enterprises, and the successor in interest to Texaco
 
 
 [2]
 There are vastly conflicting estimates of just how much oil was actually spilled. OSPR estimated the spill volume to be 44.32 barrels, while the City's expert witness estimated the total spill volume to be over 331.15 barrels
 
 
 [3]
 UnderSeadrift, the "public" claims asserted in the City's complaint are clearly barred. To the extent the City claims to represent the public interest, those claims were properly dismissed in that the DFG was statutorily authorized to take the lead in responding to oil spills, and thus, any issues raised on behalf of the public would be considered to be identical to the issues already resolved in DFG's settlement with Texaco. Seadrift, 71 Cal. Rptr.2d at 86 (finding that the purpose of the state agency's settlement agreement was to resolve the dispute between the parties regarding the public's interest in the disputed land, thus res judicata barred the claims brought on behalf of the public); Cal. Gov't Code § 8670.7(a) (authorizing DFG to "direct prevention, removal, abatement, response, containment, and cleanup efforts with regard to all aspects of any oil spill in the marine waters of the state....").
 
 
 [4]
 The City's easement provides it "the right, but not the obligation, to prevent or prohibit any activity that is inconsistent with the stated purposes, terms, conditions, restrictions or covenants of [the] Deed and the right to enter the Subject Property for the purpose of removing any building, structure, improvement or any material whatsoever constructed, placed, stored, and deposited, or maintained on the Subject Property contrary to the stated purposes of this Deed or to any term, condition, restriction, or covenant of [the] Deed."
 
 
 [5]
 The actual representation was made by a deputy Contra Costa County district attorney, but there is no suggestion that the interests of the county and the DFG were not closely aligned in the civil resolution of the criminal case