BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE GEORGE NAKANO, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a school district charge an application fee of $20 to cover its costs of processing an interdistrict attendance request submitted by a pupil residing within another district?
 CONCLUSION
A school district may not charge an application fee of $20 to cover its costs of processing an interdistrict attendance request submitted by a pupil residing within another district.
 ANALYSIS
The question presented for analysis concerns a pupil who resides in one school district but who wishes to attend school in another district. The latter school district proposes to charge the pupil a non-refundable fee of $20 to cover its costs of processing the pupil's application. We are informed that this district may receive as many as 800 applications each year and that each application requires several hours of secretarial and administrative time to process. We conclude that the school district may not charge a fee to process interdistrict attendance applications.
Normally, a pupil is required to attend school in the district where a parent or guardian resides. (Ed. Code, § 48200.)[1]
However, section 48204 provides:
 "(a) Notwithstanding Section 48200, a pupil shall be deemed to have complied with the residency requirements for school attendance in a school district, provided he or she is:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(2) A pupil for whom interdistrict attendance has been approved pursuant to [sections 46600 — 46611].
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."[2]
Section 46600 states:
 "(a) The governing boards of two or more school districts may enter into an agreement, for a term not to exceed five school years, for the interdistrict attendance of pupils who are residents of the districts. The agreement may provide for the admission to a district other than the district of residence of a pupil who requests a permit to attend a school district that is a party to the agreement and that maintains schools and classes in kindergarten or any of grades 1 to 12, inclusive, to which the pupil requests admission.
 "The agreement shall stipulate the terms and conditions under which interdistrict attendance shall be permitted or denied.
 "The supervisor of attendance of the district of residence shall issue an individual permit verifying the district's approval, pursuant to policies of the board and terms of the agreement, for the transfer and for the applicable period of time. A permit shall be valid upon concurring endorsement by the designee of the governing board of the district of proposed attendance. The stipulation of the terms and conditions under which the permit may be revoked is the responsibility of the district of attendance.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
The statutory scheme authorizing interdistrict attendance by pupils neither authorizes nor prohibits the charging of a processing fee in connection with an application. Under such circumstances, may a fee be charged?
The Constitution states in part: "The Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established." (Cal. Const., art. IX, § 5.) This provision entitles "the youth of the State . . . to be educated at the public expense." (Wood v. Flood (1874) 48 Cal. 36, 51.)
The leading case interpreting the Constitution's "free school" guarantee is Hartzell v. Connell (1984) 35 Cal.3d 899
("Hartzell"), where taxpayers challenged fees imposed by a high school district for participating in extracurricular music, drama, and sports activities. The court concluded that the guarantee includes "all activities which constitute an `integral fundamental part of the elementary and secondary education' or which amount to `"necessary elements of any school's activity."' [Citations.]" (Id., supra, 35 Cal.3d at p. 905.) The court found that "extracurricular activities constitute an integral component of public education" (id. at p. 909), and consequently, the district's collection of the fee was prohibited since "[a] school which conditions a student's participation in educational activities upon the payment of a fee clearly is not a `free school'" (id. at p. 911).
Eight years after Hartzell struck down the charging of fees for participating in extracurricular activities, the court considered whether a district could charge fees for transporting pupils to and from school. (Arcadia Unified School Dist. v. State Dept. of Education (1992) 2 Cal.4th 251; "Arcadia.") The court held that the statute authorizing the collection of transportation fees did not violate the Constitution because transportation to and from school was not an educational activity or an essential element of school activity under the Hartzell test. (Id. at p. 263.) The court distinguished charges related to the cost of providing educational programs and services as follows:
 "Clearly, the protection of the free school clause extends to the cost and upkeep of the school itself and its physical facilities; districts cannot charge for such expenses as teachers' salaries, school furniture, or the use of school buildings for educational activities. Items such as these are necessary elements of any school's activity, and must be provided to students without charge. [Citation.]" (Id. at p. 264, fn. 10.)
Most recently, in California Association for Safety Education v. Brown (1994) 30 Cal.App.4th 1264 ("Brown"), the Court of Appeal held that fees charged by a high school district for driver training violated the Constitution since such training was part of the school curriculum and "educational" in character. (Id. at p. 1280.)
In keeping with the free school guarantee of the Constitution, the State Board of Education has adopted section 350 of title 5 of the Code of California Regulations ("Regulation 350"). Regulation 350 states: "A pupil enrolled in a school shall not be required to pay any fee, deposit, or other charge not specifically authorized by law." As previously indicated, the statutory scheme authorizing interdistrict transfers does not authorize the collection of an application fee. No other law makes such a fee "specifically authorized" for purposes of Regulation 350.[3]
The Hartzell court held that the State Board of Education was well within its authority to adopt Regulation 350 for the governance of school districts. (Hartzell, supra, 35 Cal.3d at pp. 914-915.) In particular, the court upheld Regulation 350 against a challenge based upon section 35160, which authorizes a school district to "initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with . . . any law . . . ." The court found Regulation 350 to be a "law" within the meaning of section 35160. (Id. at pp. 915-917.)
Here, if the district of residence were proposing to charge an application fee to cover its costs of processing an interdistrict attendance request, Regulation 350 would clearly bar collection of the fee. We reject the suggestion that since the proposed fee would be charged by the district where the pupil is not currently "enrolled," Regulation 350 would be inapplicable. Such a narrow interpretation of Regulation 350 would only protect a pupil from the payment of fees to the school he or she is currently attending. The plain wording of Regulation 350, however, does not restrict the proscribed fees to those imposed by the school of attendance. The regulation applies to a pupil "enrolled in a school," a phrase we have no difficulty in construing to mean enrollment in any school within the state's public school system.[4]
In sum, Regulation 350 protects a pupil from any fees imposed by a school or district within the public school system, except for those fees specifically authorized by law. (See Cal. Dept. of Ed., Fiscal Management Advisory 97-02 (1997).)[5] Such protection extends to fees designed to cover a school district's costs of performing a statutorily mandated administrative function, including the processing of interdistrict attendance applications.
We conclude that a school district may not charge an application fee of $20 to cover its costs of processing an interdistrict attendance request submitted by a pupil residing within another district.
[1] All references hereafter to the Education Code are by section number only.
[2] Sections 46600-46611 constitute the primary authorization for a pupil to attend a school outside his or her district of residence. We are not concerned here with other circumstances that may allow interdistrict attendance (see §§ 48204, subd. (b) [employment of parent within boundaries of school district], 48301 ["school district of choice"]) or intradistrict attendance involving open enrollment at schools within the district of residence. (See generally 84 Ops.Cal.Atty.Gen. 198 (2001).)
[3] In Arcadia, Regulation 350 was not examined by the court since the district transportation fee at issue was specifically authorized by statute. (Arcadia, supra, 2 Cal.4th at p. 255.) Several statutes authorize a variety of fees (e.g., §§ 32390 [fee for fingerprinting program], 35330 [out-of-state field trips and excursions]; 35335 [school camps, fee not mandatory]; 39807 [transportation of pupils to and from schools]; 48050, 48052 [tuition fee for pupil living in adjoining state or country]).
[4] "Generally, the same rules of construction and interpretation that apply to statutes govern the construction and interpretation of an administrative agency's rules and regulations. [Citation.]" (Industrial Indemnity Co. v. City and County of San Francisco (1990) 218 Cal.App.3d 999, 1008.) Accordingly, we interpret Regulation 350 to effectuate its purpose (see Curle v. Superior Court (2001) 24 Cal.4th 1057, 1063), giving the words their usual, ordinary meanings (see Hunt v. Superior Court (1999)21 Cal.4th 984, 1000). "`[C]ourts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citation.]" (Wells Fargo Bank v. Superior Court (1991)53 Cal.3d 1082, 1097.)
[5] "It is well settled that `courts respect the interpretation given a statute by the agency charged with its administration and when the construction of an administrative regulation is in issue, the administrative construction is accorded even greater deference.' [Citations.]" (Westfall v. Swoap (1976)58 Cal.App.3d 109, 114; see Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 7, 11-12; Smith v. Board of Supervisors (2002) 104 Cal.App.4th 1104, 1118.)