Filed 4/27/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL GROVE,<br><br>        Plaintiff and Appellant,<br>v.<br><br>JUUL LABS, INC.,<br><br>        Defendant and Respondent. | A162276<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-20-582059) |

Daniel Grove appeals from an order staying his shareholder lawsuit against Juul Labs, Inc. pursuant to the doctrine of forum non conveniens. (Code Civ. Proc., § 410.30 (section 410.30).) Grove contends the trial court erred by enforcing a forum selection clause in Juul's corporate charter that requires Grove to pursue his claims in Delaware. Considering first the class and derivative claims Grove brings, we disagree that it was unreasonable to enforce this forum selection clause. Considering next Grove's claim to inspect the company's books and records, we conclude this dispute has already been adjudicated in the Delaware Court of Chancery, whose decision is entitled to full faith and credit here. We accordingly affirm the stay order.

**BACKGROUND**

Juul is a Delaware corporation that, during the period relevant to this case, was headquartered in San Francisco. Grove is a former employee of Juul who during his employment received options to acquire shares in the company. In accepting these options, Grove acknowledged they were being granted under a standard-form stock option agreement and could only be

1

exercised under another standard-form agreement (the Exercise Agreement). Grove stopped working for Juul in late 2017, and the following year he exercised options to acquire 5,000 shares of Juul stock.

## I. Grove's Demand To Inspect Company Records

On December 27, 2019, Grove sent Juul a demand to inspect the company's books and records pursuant to California Corporations Code section 1601 (section 1601).

Section 1601 states in part: "The accounting books, records, and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation, and of any foreign corporation keeping any records in this state or having its principal executive office in this state, . . . shall be open to inspection . . . upon the written demand on the corporation of any shareholder . . . at any reasonable time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate." (Corp. Code, § 1601, subd. (a)(1).)

In his demand letter, Grove stated that the purpose of his inspection was to determine the value of his stock and to investigate potential breaches of fiduciary duty by officers and directors. Grove requested a response within five business days and advised that if Juul refused to comply with his demand, he might seek an order from the San Francisco Superior Court.

## II. The Lawsuits

The company got to the courthouse first. On January 6, 2020, Juul filed an action for declaratory and injunctive relief in Delaware (the Delaware action). Juul sought a judgment establishing that: Grove's inspection rights are governed by Delaware law; Grove waived by contract his rights to inspect company books and records; Juul is not obligated to make its books and

2

records available to Grove; and Grove is prohibited from asserting an inspection right under California law.

The following day, on January 7, 2020, Grove filed this case, a shareholder class action and derivative complaint for damages and injunctive relief (the California action). Grove's original complaint named officers and majority shareholders as defendants and Juul as a defendant and nominal defendant. Grove purported to allege seven distinct causes of action based on allegations that individual defendants breached their fiduciary duties to minority shareholders by failing to hold annual meetings, failing to disseminate annual reports, self-dealing, and acting in bad faith. One of Grove's claims was framed as a direct, individual cause of action against Juul for violating his inspection rights under section 1601. Grove alleged that, as a shareholder of record, he made a lawful request to inspect Juul's books and records for the purpose of determining the value of his stock and investigating breaches of fiduciary duty, and that he is entitled to an order of mandamus requiring Juul "to comply with its obligations" under section 1601.

Several weeks later, Grove requested leave to amend his original complaint in the California action, explaining that Juul had notified him of its view that a forum selection clause required the derivative and class claims to proceed in Delaware. Grove "desire[d] to avoid motion practice over" a forum selection clause, and so, on March 4, 2020, filed a first amended complaint naming Juul as the sole defendant and alleging just a single cause of action for violating section 1601. Grove's complaint repeated allegations that he made a proper demand to inspect company books and records, adding that Juul "wrongfully" rejected the demand and refused to produce any

3

documents. Grove prayed for an order of mandamus requiring Juul to comply with his inspection demand and an award of costs and attorney fees.

## III. The First Stay of the California Action

In June 2020, Juul filed a motion to stay the California action under section 410.30, which states in part: "When a court . . . finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc., § 410.30, subd. (a).)

On July 1, 2020, the trial court held a hearing on and granted Juul's motion. Largely accepting the arguments Juul made, the court observed that the Exercise Agreement Grove signed contains a provision stating that courts sitting in Delaware have exclusive jurisdiction to enforce the agreement's terms,[1] and also a provision "that [Juul] contends unconditionally and irrevocably waives [Grove's] rights to inspect Juul's books and records." The court found that Grove failed to show that enforcing the forum selection clause in this agreement would be unfair or unreasonable, particularly since Juul is a Delaware corporation, the parties' agreements are governed by Delaware law, the parties had already engaged in litigation in Delaware

---

[1] The Exercise Agreement states: "This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of laws. I irrevocably [agree] to the exclusive jurisdiction of any state or federal court sitting in the State of Delaware for the purpose of enforcing any provision of this Agreement, and I agree that I shall not assert any claim that I am not subject to jurisdiction of such courts, that the venue is improper, that the forum is inconvenient or any similar objection, claim or argument." Juul maintains there is a similar provision in an Investors' Rights Agreement by which Grove agreed to be bound in accepting the stock options.

4

concerning the same issues, "and neither ha[d] contested jurisdiction in Delaware."

Grove did not appeal the July 2020 stay order.

## IV. The Delaware Judgment

On August 13, 2020, the Court of Chancery of Delaware granted Juul judgment on the pleadings in its declaratory relief action. The 27-page opinion, which was subsequently admitted into evidence in the California action, is part of the record on appeal. (See also *Juul Labs*, *Inc. v. Grove* (Del.Ch. 2020) 238 A.3d 904.)

In that decision, the Delaware court first addressed and refuted Juul's argument that Grove had surrendered by contract his right to inspect documents under California law. The court found that the parties' agreements addressing inspection rights pertain specifically and exclusively to inspection rights under *Delaware* law. As Grove did not waive inspection rights afforded by *California* law, he was not contractually barred from invoking section 1601.

The Delaware court next addressed the internal affairs doctrine, which it concluded did bar Grove from invoking inspection rights afforded by California law. "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." (*Edgar v. MITE Corp*. (1982) 457 U.S. 624, 645.) The court found that "[s]tockholder inspection rights are a core matter of internal corporate affairs," so Grove's rights as a stockholder are governed by Delaware law; Delaware, as the state of incorporation, governs Juul's internal affairs. The

5

court compared the "suite of provisions in the California Corporations Code addressing information rights" with the right to inspect books and records under the Delaware General Corporation Law (DGCL) and concluded that, although the two regimes are not "radically different," they are "not the same either." Thus, the internal affairs doctrine precludes Grove from asserting inspection rights under California Corporations Code section 1601, the court concluded.

Next, the Delaware decision addresses whether Grove must pursue his inspection rights only in a Delaware court. Central to this claim is the language of Juul's amended and restated certificate of incorporation. This corporate charter contains a forum selection clause making "the Court of Chancery in the State of Delaware . . . the sole and exclusive forum for any stockholder" to bring the following actions: "(i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation, its directors, officers, employees or stockholders arising pursuant to any provision of the DGCL or this Certificate of Incorporation or the Bylaws or (iv) any action asserting a claim against the Corporation, its directors, officers, employees or stockholders governed by the internal affairs doctrine." The court found that an action to inspect Juul's company books and documents falls squarely within the third and fourth of these categories; it is both an action against Juul based on a claim arising from the DGCL, and an action asserting a claim governed by the internal affairs doctrine. Therefore, Grove may litigate his inspection rights against Juul only in the Delaware Court of Chancery, the court concluded.

The Delaware court's decision finishes with this summary of material findings: "Grove did not waive his right to seek an inspection of books and records under California law. Under the internal affairs doctrine, however, Grove does not have the right to seek an inspection of books and records under California law. That right exists only under Delaware law. Under the Company's certification of incorporation, any action to enforce that right must be brought in this court. The Company's motion for judgment on the pleadings seeking declarations on these issues is granted. Grove's cross motion for judgment on the pleadings is denied."[2]

Grove did not appeal the judgment in the Delaware action.

## V. The Present Appeal

After receiving the adverse judgment in Delaware, Grove filed in September 2020 a motion to lift the stay of his California action. Over Juul's objection, the trial court granted the motion, finding the California action had been stayed "to allow the parties' Delaware litigation to proceed," and the Delaware action was "now over."

On November 13, 2020, Juul filed a demurrer to Grove's then-operative first amended complaint on the ground that Grove's sole cause of action had been fully adjudicated in the Delaware action. Juul requested that the court sustain its demurrer without leave to amend and dismiss Grove's action with prejudice on the ground that Grove's section 1601 claim is barred by principles of collateral estoppel and full faith and credit.

---

[2] The court declined to rule on Juul's claim that Grove waived his inspection rights under Delaware law since Grove had not yet made an inspection demand under Delaware law and the parties had not briefed whether Delaware law permits such a waiver. We do not find any indication in the appellate record that Grove subsequently made an inspection claim against Juul in a Delaware court under Delaware law.

In December 2020, Juul's demurrer was removed from the court calendar after Grove obtained an ex parte order granting him leave to file a second amended complaint. Grove's second amended complaint is substantially similar to his original complaint against Juul and the individual defendants, alleging class and derivative causes of action as well as the direct, individual claim against Juul for violating his inspection rights under section 1601.

In January 2021, Juul once again filed a motion to dismiss or stay the California action on the ground of forum non conveniens. (See Code Civ. Proc., § 410.30.) Juul argued that the class and derivative causes of action Grove attempted to resurrect in his second amended complaint must be litigated in Delaware pursuant to the corporate charter's forum clause, and that the Corporations Code section 1601 claim is barred by the Delaware judgment. Juul requested a dismissal to put a stop to Grove's "gamesmanship" or, alternatively, a stay while Grove seeks relief in Delaware.

On February 17, 2021, the trial court held a hearing on Juul's motion to dismiss or stay the action and on another pending motion that Grove had filed the previous November, seeking to void the forum selection clause in the Exercise Agreement pursuant to Labor Code section 925 (section 925).[3] Section 925 provides that an "employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:  [¶] (1) Require the employee to adjudicate outside of California a claim arising in California.

---

[3] Grove also sought to void a similar clause in the related Investors' Rights Agreement (to the extent the agreement binds him), but the motion treats the two agreements together, as do the parties' appellate briefs, so we discuss the Investors' Rights Agreement no further.

[¶] (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California." (Lab. Code, § 925, subd. (a).) A contract provision that violates section 925 is voidable by the employee, in which case the employee's claim(s) shall be adjudicated in California under California law. (*Id.*, subd. (b).) Grove argued section 925 gives him the right to void the forum selection clause in the Exercise Agreement because he was required to accept the clause as a condition of his employment, and the clause would deprive him of a substantial right under California law to inspect Juul's books and records.

On February 19, 2021, the trial court granted Juul's motion for a stay and denied Grove's motion to void the Exercise Agreement's forum selection clause (the February 2021 order). Staying this action under the forum non conveniens doctrine, the court made the following findings with regard to Grove's shareholder class and derivative causes of action: these claims fall squarely within the forum clause in the corporate charter; contrary to Grove's contention, Juul did not waive its right to seek a stay of them since Grove voluntarily dismissed his substantially similar claims prior to the litigation in Delaware; and Labor Code section 925 does not apply to the shareholder class and derivative claims because Grove alleged them in his capacity as a shareholder, not an employee. The trial court also concluded the Delaware judgment requiring Grove to pursue his inspection rights in Delaware and precluding him from relying on California Corporations Code section 1601 is entitled to full faith and credit and collateral estoppel in California.

Because Grove is a California resident, the trial court ordered that the California action be stayed rather than dismissed while Grove decided whether to pursue relief in Delaware. (See *Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 356 (*Berg*) ["The interest of

9

California in ensuring fair treatment of California plaintiffs is the reason why the law generally allows only for a stay, and except in rare circumstances precludes dismissal, of an action filed by California residents"].)

The court denied as moot Grove's motion under Labor Code section 925 to void the forum selection and choice-of-law provisions in the Exercise Agreement.

## DISCUSSION

### I. Issues On Appeal

Grove contends the trial court erred by staying the California action under section 410.30. We review the challenged rulings for abuse of discretion. (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*); *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 148 (*Verdugo*).)

Section 410.30, which authorizes courts to stay or dismiss actions that should be heard in a different forum, codifies the doctrine of forum non conveniens. (*Drulias v. 1st Century Bancshares, Inc.* (2018) 30 Cal.App.5th 696, 703 (*Drulias*).) "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik, supra,* 54 Cal.3d 744, 751.) Factors that courts consider include whether there is a suitable alternative forum, and whether the respective interests of the parties and public weigh in favor of retaining the action for trial in California. (*Ibid.*)

A section 410.30 motion is a proper vehicle for enforcing a forum selection clause. (*Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1494, fn. 1 (*Lu*).) "California favors contractual forum selection clauses so long as they are entered into freely and voluntarily, and

10

their enforcement would not be unreasonable." (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11.) "Both California and federal law presume a contractual forum selection clause is valid and place the burden on the party seeking to overturn the forum selection clause." (*Schlessinger v. Holland America* (2004) 120 Cal.App.4th 552, 558.) Thus, when a section 410.30 motion is based on a mandatory forum clause, arguments "that the previously chosen forum is unfair or inconvenient are generally rejected." (*Berg, supra*, 61 Cal.App.4th at p. 358; see also *Drulias, supra*, 30 Cal.App.5th at p. 703; *Lu, supra*, 11 Cal.App.4th at p. 1494, fn. 1.) Instead, the party opposing the motion must establish that enforcement of the clause would be unreasonable. (*Berg*, at p. 358.)

In the present case, the trial court gave different reasons for staying Grove's class and derivative claims, on the one hand, and the section 1601 claim, on the other. The class and derivative claims were stayed pursuant to the charter's forum clause. The section 1601 claim was stayed pursuant to principles of collateral estoppel and full faith and credit. We will separately address these two distinct rulings.

## II. The Class and Derivative Claims

Grove does not dispute the trial court's finding that his class and derivative claims "fall squarely" within the forum clause in the corporate charter. Instead, Grove offers two reasons why enforcing that clause is unreasonable, contending: (1) Juul waived its right to enforce the charter's forum clause; and (2) requiring Grove to litigate his claims in Delaware violates public policy.

### A. Waiver

Grove contends that Juul "unreasonably delayed for nearly a year" before moving to enforce the forum selection clause in its corporate charter.

11

According to Grove, the fact that Juul's first stay motion and its demurrer to the first amended complaint did not rely on this particular forum clause (but on the forum clause in the Exercise Agreement) compels a finding that Juul waived its right to invoke the forum clause in the charter, since a stay motion based on a forum selection clause must be filed within a "reasonable time." (Citing *Trident Labs, Inc. v. Merrill Lynch Commercial Finance Corp.* (2011) 200 Cal.App.4th 147, 155 (*Trident Labs*).)

Grove's waiver theory ignores critical facts. Before Juul even appeared in the California action, Grove amended his complaint to omit the class and derivative causes of action from his original complaint because Juul brought a forum selection issue to his attention. Thus, when Juul filed its first stay motion the company had neither occasion nor opportunity to move to stay the class and derivative claims that had been dropped. By the same token, the demurrer filed after the parties litigated their dispute in Delaware was directed at the first amended complaint, which still lacked class or derivative causes of action. And after Grove resurrected those claims in his second amended complaint, Juul responded promptly with its section 410.30 motion.

Grove argues that the fact he did not allege class and derivative claims in the first amended complaint is a "red herring," and that the *only* relevant fact is that Juul did not assert the charter's forum clause at the outset of this case. Grove insists that Juul's failure to assert this specific clause instead of, or in addition to, the Exercise Agreement's forum clause "mandate[s]" a finding of waiver. We disagree. When Grove's sole claim was that Juul violated his inspection rights under section 1601, Juul based its stay motion on the forum clause in the Exercise Agreement, which was the contract containing the alleged waiver of Grove's inspection rights. That motion resulted in a stay on forum non conveniens grounds of Grove's California

action. Later, when Grove added back the class and derivative claims, Juul invoked the charter's forum clause, which covers those claims. All of these facts were relevant to the court's discretionary decision whether to enforce the charter's forum clause.

Grove's waiver analysis finds no support in his citation to *Smith, Valentino & Smith, Inc v. Superior Court* (1976) 17 Cal.3d 491 (*Smith*). In that mandate proceeding, our state Supreme Court affirmed an order staying Smith's breach of contract action against Assurance pursuant to a reciprocal forum selection clause, which required Smith to bring all actions arising out of the contract in Philadelphia and Assurance to bring all such actions in Los Angeles. (*Id.* at pp. 493 & 494.) Pertinent here, the Court rejected the contention that forum selection clauses violate public policy (*id.* at p. 495), affirmed the rule that the party opposing a forum clause has the burden of establishing that enforcement would be unreasonable (*id.* at pp. 496–497), and expressly held that the trial court "acted within its discretion" in enforcing the forum clause in that case (*id.* at p. 493).

Grove cites *Smith* for the proposition that "objections to the venue of an action are waived unless promptly presented." (*Smith*, *supra*, 17 Cal.3d at p. 497.) Here, the record shows that Juul did promptly—and repeatedly— object to the California forum. Moreover, *Smith* does not support any attempt to employ the waiver rule as a constraint on a court's discretion to enforce a forum clause. In *Smith*, the plaintiff sought to prevent Alliance from enforcing the forum selection clause on the ground that Alliance had previously breached the clause in filing a claim against Smith. (*Id.* at pp. 496–497.) The prior breach was a relevant factor, the Supreme Court found, but did not preclude the trial court from exercising its discretion to enforce the forum clause in Smith's case. (*Id.* at p. 497.) By analogy in the

13

present case, if Grove's waiver theory has any merit, Juul's failure to assert the forum clause in the corporate charter at the outset of the California case would be at most a relevant factor, not one that would preclude the court from enforcing the charter's forum clause.

We are equally unpersuaded by Grove's contention that the stay order conflicts with the holding of *Trident Labs*, *supra*, 200 Cal.App.4th at page 155. In that case, a borrower sued its lender in California, alleging breach of a loan agreement and related causes of action. (*Id.* at pp. 150–151.) After 19 months of "extensively litigat[ing] its rights under the loan agreement in California" (*id.* at p. 155), the defendant lender moved to dismiss or stay the action pursuant to a forum selection clause that gave it sole discretion to enforce the loan agreement in Illinois (*id.* at pp. 150–151). When the trial court granted the requested stay, its ruling was reversed on appeal. The appellate court construed section 410.30 to require that a motion to stay or dismiss be brought within a reasonable time, since no time limits are expressly stated in the statute. (*Id.* at p. 155.) It held that an unexplained delay of more than 19 months, "during which the party who seeks to change venue has repeatedly invoked the rights available to California litigants, does not survive the test of reasonableness." (*Ibid.*)

Unlike the defendant in *Trident Labs*, Juul did not actively litigate Grove's claims in California. Instead, Juul got the California action stayed while both parties litigated in Delaware, and, after the stay in California was lifted, Juul's participation in the California action was limited to seeking a dismissal or stay. Under these relevant facts, the trial court did not abuse its discretion by rejecting Grove's waiver theory.

14

### B. Labor Code Section 925

Grove argues that the trial court erred by staying his class and derivative claims pursuant to the forum selection clause in Juul's corporate charter because (1) enforcing that forum clause contravenes the public policy underlying Labor Code section 925, and (2) the forum selection clause in the Exercise Agreement violates section 925, so the case must be adjudicated in California without regard to the separate forum selection clause in Juul's corporate charter. Both contentions are unsound.

California recognizes an exception to the general rule favoring enforcement of forum selection clauses. Courts need not defer to the selected forum when deferring " 'would substantially diminish the rights of California residents in a way that violates our state's public policy.' " (*Verdugo*, *supra*, 237 Cal.App.4th at p. 147.) The exception applies if "the claims at issue are based on unwaivable rights created by California statutes," and it places a burden on the party seeking to enforce the forum selection clause to show that "litigating the claims in the contractually designated forum 'will not diminish in any way the substantive rights afforded . . . under California law.' " (*Ibid*.; see also *Handoush v. Lease Finance Group, LLC* (2019) 41 Cal.App.5th 729, 734.)

Grove's attempt to rely on this public policy exception fails at the outset because Grove has not shown that his class and derivative claims are based on a right created by California statute. Grove relies on section 925, which provides that a mandatory choice of law or forum selection clause in an employment contract is voidable at the option of the "employee" when enforcement of the provision would require the employee to litigate a claim arising in California in an out-of-state forum, or deprive the employee of the substantive protection of California law with respect to a controversy arising

15

in California.  (Lab. Code, § 925.)  By its plain language, section 925 does not apply to Grove's class and derivative claims.  Grove does not allege any claim against Juul in his capacity as an employee or former employee.  All of Grove's claims are alleged in his capacity as a shareholder, and Grove did not even become a Juul shareholder until the year after he ceased being a Juul employee.  Moreover, the forum selection clause on which the trial court relied is not part of an employment contract.  It is contained in Juul's corporate charter, which is a contractual agreement between the corporation and its shareholders. (*Bushansky v. Soon-Shiolng* (2018) 23 Cal.App.5th 1000, 1005.)

Grove posits that he can invoke Labor Code section 925 because there is an "interconnection between [his] claims and his employment-related contracts," in that he received his stock options as part of his compensation. He asserts the agreements he was required to sign in order to exercise those options were a condition of his employment.  At most, this argument draws a connection between Grove's compensation and the forum clause in the Exercise Agreement (and related agreements he was required to sign to receive or exercise his options).  It does not connect section 925 to the class and derivative claims stayed pursuant to the forum clause in Juul's corporate charter.  We see nothing in section 925 that prevents an employer from including in its compensation package an option for employees to purchase shares in a foreign corporation.  Nor do we construe the statute to require a corporation chartered in Delaware to conduct its internal affairs according to California law simply because employees in California have purchased shares.  In this case, Grove's shareholder claims arose after he left Juul's employ; they bear no relationship to his status as a former employee, and the class he seeks to represent is not confined to individuals who acquired shares

16

through employment at Juul. Grove's class and derivative claims do not implicate the labor law policies underlying section 925.

Grove attempts to rely on *Focus Financial Partners, LLC v. Holsopple* (2020) 241 A.3d 784 (*Focus Financial*), but that case does not reach the issue before us. In *Focus Financial*, a company sued its former California-based employee (Holsopple) and Holsopple's current employer for misappropriating proprietary information and violating restrictive covenants in the plaintiff's employment agreement with Holsopple. (*Id.* at pp. 791 & 799.) The case was brought in Delaware, and Holsopple successfully moved for an order dismissing himself from the action on the ground that his only connection to Delaware was that he had signed agreements to receive "incentive units" in the company as part of his compensation, and some of those agreements designated Delaware courts as the exclusive forum for resolving disputes. (*Id.* at pp. 791–792; 824.) In a lengthy analysis, the *Focus Financial* court granted the dismissal, finding that California law applied and that section 925 afforded Holsopple the right to void the forum selection clause in his employment-related agreements. (*Id.* at pp. 821–822.)

In reaching this conclusion, the Delaware Court of Chancery recognized that California had a fundamental interest in protecting the rights of its own employees. (*Focus Financial, supra,* 241 A.3d at pp. 811–812.) But it limited its holding to employment-related claims, specifying that it was not reaching the question of whether a separate forum selection clause in the company's operating agreement would apply in a case that was not specific to employment issues, such as one that involved internal affairs of the company, or the employee's ownership interest in the company. (*Id.* at pp. 809, 824.) The court's focus on the nature of the plaintiff's claims is key because, in contrast to *Focus Financial*, the present case is a shareholder dispute, not an

17

employment dispute, and the forum selection clause that the trial court relied upon is contained in the corporate charter, not in an employment-related contract.

Grove also relies on *Midwest Motor Supply Co. v. Superior Court* (2020) 56 Cal.App.5th 702. In that case a California-based employee named Finch sued his former employer for failing to pay his final wages on time and failing to reimburse his business expenses. (*Id*. at p. 707.) The defendant employer moved to dismiss or stay the action pursuant to an Ohio forum selection clause in Finch's employment agreement. (*Id*. at p. 707.) Denying the motion, the trial court found that Finch had a right under Labor Code section 925 to void the forum selection clause. (*Id*. at p. 708.) The court of appeal affirmed, observing that the purpose of section 925 is to "provide a California-based employee with a California forum to litigate employment-related claims . . ." (*Id*. at p. 710.) In the present case, Grove is a former California-based employee of Juul, but because the class and derivative claims he seeks to litigate are not employment related, section 925 is irrelevant.

Seeking to bring this case within the rule of *Focus Financial* and *Midwest Motor Supply*, Grove attempts to shift the focus from the forum selection provision in Juul's corporate charter, which was the basis for the trial court's decision, to the separate forum selection provisions in his "employment-related agreements"—the Exercise Agreement and related agreements. Grove argues that under Labor Code section 925, subdivision (a), the forum selection clause in these "employment-related agreements" is not enforceable. He then reads subdivision (b) of section 925 as requiring this case to proceed in California as a direct consequence of that unenforceability.

Section 925, subdivision (b) will not bear the weight Grove places on it. The subdivision provides, if "[a]ny provision of a contract that violates

18

subdivision (a) . . . is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute." (Lab. Code, § 925, subd. (b).) But no provision of the Exercise Agreement or related agreements has been rendered void. We need not decide whether the forum selection clause in those agreements *could have been* rendered void, had Juul relied on those clauses in seeking to stay the class and derivative claims. It is enough to observe that the forum selection clause *in those agreements* was not the basis for Juul's second stay motion, nor for the trial court's decision in the February 2021 order that the case should proceed in Delaware. Grove may not moot the forum selection clause *in the corporate charter* by attempting to void a different forum selection clause. Because the class and derivative claims fall within the forum selection clause in the corporate charter and that provision has not been rendered void, Grove establishes no abuse of discretion in the trial court's decision to stay those claims.

## III. The Section 1601 Claim

Grove contends that even if the forum clause in the corporate charter supports a stay of his class and derivative claims, the trial court committed reversible error by staying his direct claim against Juul for refusing his inspection demand pursuant to California Corporations Code section 1601. We are not persuaded by Grove's arguments on this point, all of which attempt an end run around the judgment in the Delaware action.

Grove argues first that the charter's forum clause does not apply to this cause of action. He postulates that the only provision in the charter's forum clause that might conceivably apply to his section 1601 claim is the language designating Delaware the exclusive forum for stockholder claims that are "governed by the internal affairs doctrine." Grove then gives two reasons

19

why this provision does not apply, arguing that shareholder inspection rights are not governed by the internal affairs doctrine, and that staying the section 1601 claim under this provision would violate California public policy.

We will not entertain these arguments because, as we have already explained, the trial court did not stay the cause of action under section 1601 pursuant to a forum clause. It stayed the section 1601 claim because the parties have already litigated Grove's inspection rights in Delaware, and the trial court found that principles of collateral estoppel and full faith and credit preclude Grove from relitigating a dispute in California that was already adjudicated in the Delaware action.

Taking a different tack, Grove purports to challenge on the merits the Delaware court's conclusion that Grove's shareholder inspection rights are governed by the internal affairs doctrine. Grove argues that the Delaware court misconstrued Delaware law, and that the court should have followed California cases that have found shareholder inspections rights do not concern the internal affairs of a corporation. (Citing *Gertridge v. State Capital Co.* (1933) 129 Cal. App. 86, 87–88; *Valtz v. Penta Investment Corp.* (1983) 139 Cal.App.3d 803, 807.)

Juul disagrees that the Delaware court erred but does not argue the matter. Professor Joseph Grundfest, who filed an amicus brief in this appeal, argues in support of the Delaware court's conclusion that the internal affairs doctrine governs shareholder inspection rights. Grundfest also argues California authority supports this conclusion. (Citing *Lidow v. Superior Court* (2012) 206 Cal.App.4th 351, 359; *Greb v. Diamond Internat. Corp.* (2013) 56 Cal.4th 243, 251–252, fn. 9; Cal. Practice Guide: Corporations (The Rutter Group) Ch. 3-A, ¶ 4.121.)

20

Once again, we will not decide this issue because the question whether shareholder inspection rights are governed by the internal affairs doctrine is not properly before us. Grove litigated his inspection rights in Delaware, received an unfavorable ruling, and elected not to appeal. The present appeal is not from the Delaware judgment, but from a stay order that gives full faith and credit and collateral estoppel effect to the Delaware judgment.

Finally, Grove argues that the collateral estoppel doctrine should not be applied in this case because denying him inspection rights under section 1601 would be inconsistent with public policy. As support for this argument, Grove cites cases applying a "public interest" exception to the collateral estoppel doctrine. (See e.g., *Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 257–259 (*Arcadia*).)

"Generally, collateral estoppel bars the party to a prior action, or one in privity with him, from relitigating issues finally decided against him in the earlier action." (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 64.) However, our state Supreme Court has found that " 'when the issue is a question of law rather than of fact, the prior determination is not conclusive . . . if the public interest requires that relitigation not be foreclosed.' " (*Ibid.*) "The public interest exception is an extremely narrow one . . . and is only to be applied in exceptional circumstances." (*Arcadia, supra,* 2 Cal.4th at p. 259.)

*Arcadia* illustrates exceptional circumstances of the sort that give rise to a public policy exception. The question before the Court was whether an Education Code section authorizing school districts to charge fees for student transportation violated the California Constitution. (*Arcadia, supra,* 2 Cal.4th at p. 255.) Our high court observed that this was "a pure question of law" that "affects the public in general, including children, parents and

21

taxpayers." (*Id*. at p. 259.) Further, "[b]ecause the [plaintiff] school districts were not parties to the earlier case . . . they [had] not had the opportunity to litigate the constitutionality of" the statute at issue. (*Id*. at p. 259.) And because the Court had ordered the prior case depublished (*id*. at p. 256), "the state of the law on a matter of statewide importance would remain permanently unclear and unsettled" if collateral estoppel were to bar the *Arcadia* case from going forward. (*Id*. at p. 259.)

No similarly exceptional circumstances justify applying the public interest exception to Grove's shareholder inspection claim. Grove's is a private dispute, and to the extent it raises important legal issues, California courts remain free to address them in a case where the issues are properly presented. Here, when the trial court granted Juul's motion to stay the first amended complaint, Grove did not appeal that ruling but actively litigated his rights in Delaware. After losing there, Grove sought to re-litigate the matter in California. Grove fails to articulate how denying him a second bite at the apple would be detrimental to the public interest.

Grove takes the view that the public interest exception to the collateral estoppel rule authorizes a court to disregard an otherwise binding judgment on the ground that the judgment is "contrary to" California law or public policy. Grove's approach would expand the public interest exception until it is no longer "extremely narrow." (*Arcadia, supra*, 2 Cal.4th at p. 259.) More importantly, Grove's approach is contrary to United States Supreme Court precedent explaining the "exacting" nature of our obligation under the Full Faith and Credit clause. (*Baker v. General Motors Corp*. (1998) 522 U.S. 222, 231, 233 [discussing U.S. Const., art. IV, §1].) Pursuant to this obligation, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment,

22

qualifies for recognition throughout the land." (*Baker*, at p. 233.) The *Baker* Court recognized that a state's public policy may be of significance when a court decides what law to apply, but the Court "differentiat[ed] the credit owed to laws (legislative measures and common law) and to judgments." (*Id.* at p. 232.) In a preemptive rejoinder to Grove's argument, the Supreme Court emphasized, "our decisions support no roving 'public policy exception' to the full faith and credit due *judgments*." (*Id.* at p. 233.)

The courts of this state have long acknowledged that we must afford the judgments of a sister state full faith and credit. " 'California law is clear that the differing public policy or laws of the enforcing state cannot contravene the full faith and credit clause of the Constitution. As has been repeatedly stated, California must, regardless of policy objections, recognize the judgment of another state as res judicata . . . .' " (*R.S. v. PacifiCare Life & Health Ins. Co.* (2011) 194 Cal.App.4th 192, 207; *World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1011.) And we must recognize "the preclusive effect of a *judgment*," even where public policy argues against recognizing the "preclusive effect a *statute* has before final judgment is entered." (*LGCY Power, LLC v. Superior Court* (2022) 75 Cal.App.5th 844, 868–871 [full faith and credit clause does not compel application of sister state's compulsory cross-complaint statute where related action remains pending in sister state].) Recognizing, as we must, that the Delaware Court of Chancery has finally adjudicated Grove's inspection rights under California Corporations Code section 1601, we are not at liberty to reassess that claim.

## DISPOSITION

The February 2021 order is affirmed. Costs on appeal are awarded to respondent.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

Trial Court:        City & County of San Francisco Superior Court

Trial Judge:        Hon. Ethan P. Schulman

Counsel:            Bottini & Bottini Inc, Francis A. Bottini, Jr., Albert Y.
                        Chang, and Yury A. Kolesnikov for Plaintiff and
                        Appellant

                    Pillsbury Winthrop Shaw Pittman LLP, Bruce A. Ericson,
                        Colin T. Kemp, and Lee Brand for Defendant and
                        Respondent

                    Reed Smith LLP, Raymond A. Cardozo and Elizabeth S.
                        Bowman for Professor Joseph Grundfest as Amicus
                        Curiae on behalf of Defendant and Respondent

*Grove v. Juul Labs, Inc.* (A162276)